UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**LARRY LOEW,**                                              Chapter 7
    Debtor                                 Case No. 11-13339-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Motion to Alter or Amend Judgment filed by creditors of Larry Loew (the "Debtor"), identified as "Erica Vargas et al. (collectively, "Vargas"). Through her Motion, Vargas essentially seeks reconsideration of this Court's order of March 7, 2012, denying her Motion to Reopen on grounds that "documents not previously presented to the court . . . prove and/or indicate debtor was dishonest in several of the claims he put forth to the court at hearing." The Debtor did not file an Objection to the Motion to Alter or Amend Judgment. For the following reasons, this Court shall grant Vargas's Motion to Alter or Amend Judgment and grant the Motion to Reopen for the purpose of permitting Vargas to file a Complaint to Revoke the Debtor's Discharge.

1

## II. BACKGROUND

The Debtor filed a voluntary Chapter 7 case on April 13, 2011. The first meeting of creditors was scheduled for May 19, 2011 and the deadline for filing complaints under 11 U.S.C. §§ 523(a) and 727(a) was July 18, 2011. The Chapter 7 Trustee continued the meeting of creditors several times.

The Debtor filed Schedules of Assets and Liabilities and a Statement of Financial Affairs on April 28, 2011. He amended his Statement of Financial Affairs on May 5, 2011. Additionally, he filed Official Form 22A, in which he represented that he was unmarried, although at the hearing conducted on March 7, 2012 with respect to Vargas's Motion to Reopen, the Debtor repeatedly referenced his mother-in-law, Ruth Ettinger Goldstein, whom he also identified as the mother of Gail Goldstein, presumably his spouse.

On Schedule A-Real Property, the Debtor indicated that he owned no real property, although on May 27, 2011, CitiMortgage, Inc. filed a Motion for Relief from the Automatic Stay with respect to property located at 6-8 Nahant Avenue, Revere, Massachusetts in which it represented that the Debtor executed a note in the original principal sum of $416,000 secured by a mortgage on the property.[1]

On Schedule B-Personal Property, the Debtor listed cash on hand, several checking accounts and miscellaneous items of personal property. With respect to types of property

---

[1] Neither the Chapter 7 Trustee nor the Debtor filed an objection to the Motion for Relief from the Automatic Stay, and CitiMortgage, Inc. did not expressly disclose the identity of the owner of the property. Notably, it did not serve a copy of its Motion on Ruth Ettinger Goldstein.

2

identified as "Stock and interests in incorporated and unincorporated businesses. Itemize," "Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A-Real Property," and "Other personal property of any kind not already listed. Itemize," the Debtor answered "None."

On Schedule D-Creditors Holding Secured Claims, the Debtor listed CitiMortgage, Inc. as the holder of a mortgage on 6-8 Nahant Avenue, Revere, Massachusetts in the sum of $412,895. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed claims totaling $260,000, including the claim of Vargas in the sum of $25,000. He utilized an "H" for Husband in the column captioned "Husband, Wife, Joint or Community" with respect to many of the claims. On Schedules I and J-Current Income and Expenses of Individual Debtor(s), the Debtor disclosed monthly income of $1,427.08 from City Beach Properties, LLC. He did not list any income attributable to a spouse. He disclosed a monthly rent or mortgage payment of $2,93.39, which when combined with his other expenses, resulted in no monthly net income, i.e, a deficit of -$2,089.31.

The Debtor's Statement of Financial Affairs is inconsistent with his Schedules of Assets and Liabilities and Schedule I. He checked "None" with respect to Questions 1 and 2 pertaining to "Income from employment or operation of a business" and "Income other than from employment or operation of a business." Additionally, he checked "None" with respect to "Suits and administrative proceedings, executions, garnishments and attachments" pending within one year." With respect to Question 10 regarding "Other transfers," which required the Debtor to "[l]ist all other property, other than property

3

transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case," the Debtor set forth the following:

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|
| 6 & 8 Nahant Trust Ruth Ettinger Goldstein, Trustee, 235 Chestnut Hill Avenue, Brighton, MA 02135 | 12/17/2008 | Real Estate at 6 & 8 Nahant Avenue, Revere, MA -Value $345,000.00 less Mortgage to CitiMortgage of $415,000.00 |

With respect to the 6 & 8 Nahant Trust, the Debtor added:

> Debtor is the Mortgagor on 6 & 8 Nahant Avenue, Revere, MA. Property is presently in foreclosure. There appears to be no equity in the property of any kind. Debtor has Income Beneficial Interest in Trust of 49%, Life Beneficial Interest of 36% and Remainder Beneficial Interest of 100% (Income) and 70% (Beneficial). See Copy of Trust Document.

A copy of the Trust was not attached to his Statement of Financial Affairs.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|
| The 641 Beach Trust Ruth Goldstein, Trustee 237 Chestnut Hill Avenue Brighton, MA 02135 | 01/12/2007 | Real Estate Located at 641 Beach Street, Revere, MA - Value of Property $355,000.00 less Mortgage to GMAC of $340,000.00 and Cenlar Mortgage of $125,000.00. |

With respect to the 641 Beach Trust, the Debtor added:

4

Case 11-13339 Doc 57 Filed 04/11/12 Entered 04/12/12 07:56:25 Desc Main
Document Page 5 of 14

> There appears to be no equity in property of any kind. Debtor has Income Beneficial Interest in Trust of 49%, Life Beneficial Interest of 36% and Remainder Beneficial Interest of 100% (Income) and 70% (Beneficial). See copy of Trust Agreement.

A copy of the Trust was not attached to his Statement of Financial Affairs.[2]

In response to Question 15, the Debtor again checked the box "None" with respect to "Prior address of debtor," although as noted below, the Debtor claimed to have lived at 6 & 8 Nahant Street, Revere.

In response to Question 18a. which requires individual debtors "list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case," the Debtor checked the box indicating "None."

The Debtor amended his Statement of Financial Affairs for the limited purpose of setting forth his adjusted gross income for 2009 and 2010. He set forth his annual gross income for 2009 and 2010 in the amount of $1,498, an amount just slightly more than his monthly income set forth on Schedule I ($1,472.08). The Debtor's de minimus income in

---

[2] At the hearing, the Debtor stated that Vargas was "presently suing" Ruth Ettinger Goldsmith, the Trustee, whom he described as his "mother-in-law in a nursing home . . . [who is] . . . an 84-year old Holocaust survivor in poor health."

2009 and 2010 raises credibility issues with respect to his income in prior years in view of his sizeable credit card debt and ability to borrow over $400,000 in 2007.

Although the Chapter 7 Trustee moved to extend the deadline to file a complaint under 11 U.S.C. § 727, the Debtor ultimately obtained a discharge on September 22, 2011. Between the filing of the Chapter 7 Trustee's Motion on July 18, 2011 and the entry of the discharge, the Debtor, acting pro se, filed an "Amendment to Debtor's Chapter 7 Application" to set forth litigation against "HSBC" pending in the "Boston Superior Court" [sic], as well as potential litigation against CitiMortgage, Inc. and the Revere Police Department. In addition, he filed a Motion to Stay Foreclosure Sale, which this Court denied as an improper pleading. *See* Fed. R. Bankr. P. 7001(7). In that document, the Debtor stated that "[t]he only significant Debtor's asset listed was his home at 6 & 8 Nahant Avenue, Revere, Mass. 02151." He added that the Nahant property, which he did not list on Schedule A nor claim as exempt on Schedule C, " is the only asset documented with this honorable court . . ."

On September 27, 2011, Vargas filed Motion for Relief from Judgment, namely the entry of the Debtor's discharge. In support of her Motion, Vargas represented the following:

> Creditor's understanding was that notice of a final date by which they need object to a discharge of the debtor would be set on or after the final meeting of creditors, due to the fact that the initial creditor's meeting had been extended until the August 10 date [sic].
>
> Creditor received no notice of a final date to object to the discharge aside from the date contained in the notice of the initial creditor's meeting.

6

> Based upon conversations with debtor's counsel, creditor was of the understanding that no discharge was to be considered until debtor provided certain documents to the trustee's office based upon requests submitted by that office.[3]

The Court denied Vargas's Motion on October 31, 2011, stating:

> The Creditor received the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" (see #11 and #13) which advised her of the July 18,2011 deadline for filing a complaint under 11 U.S.C.§ 727. Fed. R. Bankr. P. 4004(a) and (b) and Fed. R. Bankr. P. 9006(b)(3) determine under what conditions the Court may permit an extension of time within which to file a complaint under 11 U.S.C.§ 727. The Creditor's counsel's misapprehension of the rules is not grounds for permitting the late filing of a complaint. *See generally* In re Prego Cruz, 323 B.R.827 (B.A.P. 1st Cir. 2005).

On October 25, 2011, the Court discharged the Chapter 7 Trustee and closed the Debtor's bankruptcy case.

On November 10, 2011, Vargas filed a Motion for Revocation of Debtor's Discharge, which the Court denied as an improper pleading, citing Fed. R. Bankr. P. 7001. In that Motion, which she supported with affidavits, Vargas represented that the Debtor sent her an email on October 21, 2011, inviting her to join his professional network on LinkedIn in which he described himself as the "owner of Gold & Loew Real Estate, LLC and City Beach Properties LLC." Vargas attached to her Motion a copy of the email and information from the Secretary of State for the State of Wyoming which described the Debtor as the organizer of Gold & Loew Real Estate, LLC on September 24, 2010 with an address identical to the

---

[3] In her Motion, Vargas asserted that the Debtor commingled assets of a corporation that he owns with his personal assets and refused to disclose the corporate account, failed to provide any evidence that he no longer had proceeds from a $712,500 mortgage loan, which he obtained in 2007. Vargas also referenced false information on Schedule B and the Statement of Financial Affairs.

Debtor's address, namely 237 Chestnut Hill Avenue.

Not to be deterred by the denial of the Motion for Revocation of Debtor's Discharge, Vargas filed a Motion to Reopen on December 27, 2011, citing "the stream of false statements and relevant omissions by debtor in his chapter 7 petition . . . or reckless indifference to the truth." In particular, she referenced Gold & Loew Real Estate, LLC. The Debtor did not object to the Motion to Reopen but appeared on March 7, 2012 at the hearing on the Motion. At the March 7, 2012 hearing, the Debtor, despite the copy of the email with his name on it sent from "Beach641a" on October 21, 2011, denied sending an email to Vargas inviting her to join his professional network on LinkedIn. In response to the question: "Mr. Loew, did you send that email?", he stated: "No, Your Honor. I did have some experience some time ago. LinkedIn is a social network that's a little bit like Facebook, but if one is seeking employment, that's what you do, you fill that out. Yes, Your Honor, when I filled it out . . . I filled it out one afternoon when I got an invitation. It grabbed my email list and sent everything out . . ." He continued to evade the question, finally stating "I don't even remember the account. . . ."

Additionally, at the hearing, the Debtor unequivocally represented that a Wyoming agent was the manager of Gold & Loew Real Estate, LLC, that he was not the manager, and that he had "zero interest" in the limited liability company.[4] He identified its members as Gail Goldstein and Ruth Ettinger Goldstein, stating "[t]hey were always the members." He also stated that he submitted bank statements to the Chapter 7 Trustee for Gold & Loew

---

[4] He also denied an interest in City Beach Properties, LLC.

8

Real Estate, LLC, and "answered direct questions on same to my bankruptcy Trustee." He added "[t]here is a nominal bank account which was submitted for judicial review." The Debtor also admitted having an ownership interest in Gold & Loew Real Estate, Inc., an interest which he did not id not list on Schedule B. He asserted that when he sent the LinkedIn email to Vargas about Gold & Loew Real Estate, LLC, in which he describing himself as the owner of the company, he was "puffing."

The Court denied Vargas's Motion to Reopen on March 7, 2012. On March 15, 2012, however, Vargas filed the Motion to Alter or Amend Judgment now before the Court. She attached to the Motion the Articles of Organization for Gold & Loew Real Estate, LLC, which were signed by the Debtor on September 9, 2010. In that document, in response to a question as to who will manage the limited liability company, the following appears:

> Larry Loew (Managing Member), 641 Beach Street, $ [sic] 4-B, Revere, Ma. 02151.

The Debtor did not disclose the names and addresses of any other members. Additionally, Vargas's counsel submitted an affidavit in which he represented that "[a]t no time did debtor refer to Gold & Loew Real Estate, LLC" at either the May 19, 2011 or the August 10, 2011 meeting of creditors.

### III. DISCUSSION

A. Applicable Law

Federal Rule of Bankruptcy Procedure 9024 makes Fed. R. Civ. P. 60 applicable to cases under the Bankruptcy Code, subject to certain exceptions not relevant to the instant

case. Rule 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable neglect;
> > (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
> > (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> > (4) the judgment is void;
> > (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
> > (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  As this Court observed in In re Franklin, 445 B.R. 34 (Bankr. D. Mass. 2011),

> "[I]t is the invariable rule, and thus, the rule in this circuit, that a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise."

445 B.R. at 45 (citing Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., Inc., 953 F.2d 17, 20 (1st Cir. 1992)).  This Court added: "In bankruptcy cases, courts in this district routinely hold that motions for reconsideration are not 'a means by which parties can rehash previously made arguments' and that to succeed on motions to reconsider, the movant must 'show newly discovered evidence or a manifest error of fact or law.'" In re Franklin, 445 B.R. at 45. (citing In re Wedgestone Financial, 142 B.R. 7, 8 (Bankr.D.Mass.1992).

10

With respect to a motion to reopen, Fed. R. Bankr. P. 5010 provides, in relevant part, that "[a] case may be reopened on motion of . . . [a] party in interest pursuant to § 350(b) of the Code." Fed. R. Bankr. P. 5010.  In turn, § 350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).  "It is well settled that the decision to reopen a case is within the sound discretion of the bankruptcy court" and that "the exercise of that discretion depends upon the particular circumstances and equities of the individual case."  The Cadle Co. v. Andersen (In re Andersen), No. MB 10-015, 2011 WL 4571900 at * 3 (B.A.P. 1st Cir. Jan. 20, 2011)(citing In re Crocker, 362 B.R. 49, 53 [(B.A.P. 1st Cir. 2007); Finch v. Coop (In re Finch), 378 B.R. 241, 245 (B..A.P. 8th Cir. 2007), aff'd, 285 Fed. Appx. 576 (8th Cir. 2010)).  The panel in Andersen added:

> A creditor's request for an opportunity to seek a revocation of a discharge pursuant to § 727(d) may be sufficient cause to reopen a case depending on the circumstances of the specific case. See In re Kirschner, 46 B.R. 583, 586 (Bankr. E.D .N.Y. 1985); see also Leach v. Buckingham (In re Leach), 194 B.R. 812, 814 (E.D. Mich. 1996) (stating "the option to reopen is available to creditors ... to pursue the revocation of the debtor's discharge . . ."); In re Savage, 167 B.R. 22 (Bankr.S.D.N.Y.1994).

Id.  Revocation of the discharge is governed by 11 U.S.C. § 727(d), which provides:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if . . . such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

11 U.S.C. § 727(d)(1).  In determining whether to revoke a discharge, courts must consider the following factors:

11

      1) whether the debtor obtained the discharge through fraud;
      2) whether the creditor possessed no knowledge of the debtor's fraud prior to the granting of the discharge; and
      3) whether the fraud, if known, would have resulted in denial of discharge under § 727(a).

2011 WL 4571900 (citing Gillis v. Gillis ( In re Gillis), 403 B.R. 137, 144 (B.A.P. 1st Cir.2009)).

    B. Analysis

In view of the Debtor's representations in open Court on March 7, 2012, and the contents of the Motion to Alter and Amend Judgment, as well as the record of proceedings in this case, the Court shall grant the Motion to Alter or Amend Judgment. The Court finds that Vargas submitted evidence discovered after the entry of the discharge, which warrants reconsideration of the disallowance of the Motion to Reopen. Moreover, the evidence presented warrants a decision to reopen the Debtor's bankruptcy case to permit the filing of a complaint to revoke the Debtor's discharge. *See* 11 U.S.C. § 727(d); Fed. R. Bankr. P. 7001(4).

The Court finds that the Debtor's Schedules and Statements of Financial Affairs have no integrity. In this regard, the value of the Debtor's assets is not the issue, it is the completeness and accuracy of the Debtor's description of his assets at the commencement of the case, which was notable for its omissions. The Debtor omitted assets, and information about those assets, and concealed his ownership interest in Gold & Loew Real Estate, LLC. The Court finds that Vargas has satisfied the tests set forth in In re Andersen, 2011 WL 4571900 at *3 for reopening the Debtor's case. Moreover, this Court finds that the circumstances present in the Debtor's case are distinguishable from those present in In re

12

Case 11-13339   Doc 57   Filed 04/11/12   Entered 04/12/12 07:56:25   Desc Main
          Document      Page 13 of 14

Strojny, No. 08-17328-JNF, 2011 WL 6887206 (Bankr. D. Mass. 2011).

In Strojny, a creditor sought to reopen the debtor's bankruptcy case to commence an action to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(4). The Court denied the creditor's motion to reopen, finding that at the time the creditor received formal notice of the bankruptcy case, she had already commenced litigation against the debtor based upon his alleged conflicts of interest and for statements he made to her in his various capacities which induced her to enter into a loan she claimed she could not afford. Strojny, 2011 WL 6887206 at * 5  The Court also found that the creditor had complained about the debtor's conduct to the Board of Bar Overseers more than two years after the closing of the real estate transaction which precipitated her claims against the debtor in which she alleged that he engaged in forgery and theft.  Id.  The Court concluded that "[s]uch criminal conduct, if it occurred, is undoubtedly the type which would have revealed itself shortly after the closing and well prior to the nondischargeability complaint deadline." Id.

In the instant case, the grounds for reopening the Debtor's case arise out of the Debtor's Schedules of Assets and Statement of Financial Affairs which were filed after the commencement of the bankruptcy case. The Court finds that Vargas has demonstrated that the Debtor did not disclose an interest in Gold & Loew Real Estate, LLC on his Schedule B and stated in open court, albeit not under oath, that he had zero interest in that entity, a statement which would appear to be demonstrably untrue. Moreover, Vargas did not learn of the existence of Gold & Loew Real Estate, LLC until after the Debtor received his discharge when she received a email from the Debtor.

## IV. CONCLUSION

In accordance with the foregoing, the Court finds that Vargas has established grounds for the allowance of her Motion to Alter or Amend Judgment. The Court shall enter orders granting that Motion, reconsidering the Motion to Reopen and, upon reconsideration, vacating the denial of the Motion to Reopen and granting the Motion to Reopen.

By the Court,

*/s/ Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 11, 2012